## Case No. 15,817.

### UNITED STATES v. MORRISON.

#### [Chase, 521.] [1]

Circuit Court, D. South Carolina. June Term, 1869.

POSTMASTER—LIABILITY FOR SURRENDER TO CONFEDERATE GOVERNMENT—COERCION—BELLIGERENT RIGHTS.

1. The policy of the United States requires postmasters and their sureties to be liable in all events: no accident or misadventure will excuse them.

2. The only exceptions are those provided for by the acts of congress; being losses occasioned by the Confederate forces or guerrillas, or such as are occasioned by any other armed forces.

3. No surrender of the property of the post-office department to the Confederate government under any other than the coercion of armed force can excuse a postmaster.

4. The whole existence of the Confederate government was a continued rebellion against the lawful government of the United States; and no one can be protected by the sanction of its authority save in acts of war.

5. The national government conceded belligerent rights to the armies of the Confederate States, and acts of a strictly military character, performed under military authority may be protected by this concession.

Morrison was appointed postmaster of the United States at Winnsboro, South Carolina, and as such executed the proper official bond with sureties, on December 20, 1859. His accounts were settled by the United States post-office department up to May 31, 1861, on which day after allowing him his legal commissions, &c. he was found indebted to the United States in the sum of seven hundred and seventy two dollars and twenty seven cents. In 1867, the United States brought suit against him for this sum, and the cause came on before a jury. After proving the acceptance of the office, the execution of the bond and the statement of the account finding the above balance against him, the government rested its case. The defendant then offered testimony to prove that he had received an order through the mails from the post-office department of the Confederate States, under whom he continued to exercise the functions of postmaster, to forward to Richmond all stamped envelopes of the United States in his possession, and that having stamped envelopes to the amount of fifty one

dollars and seven cents, he accordingly did forward the same to Richmond. He further proved that he had carefully kept United States postage stamps entrusted to him while postmaster before the war, to the amount of one hundred and thirty one dollars and sixty two cents, but that soldiers of General Sherman's army, passing through Winnsboro in 1865, had broken into his house and destroyed those stamps. He therefore claimed a credit in his account for these two amounts.

Mr. Corbin, U. S. Dist. Atty.
Mr. Conner, for defendant.

At the conclusion of the argument and previous to the charge of the Chief Justice, Mr. Corbin submitted the following prayer to the court:

The court is requested to charge the jury, 1. That if the defendant Morrison accepted the office of postmaster at Winnsboro, S. C., on December 20, 1859, and bound himself to keep safely all the public money collected by him or otherwise at any time placed in his possession and custody, till the same was ordered by the postmaster-general to be transferred or paid out, . . . . and faithfully account with the United States in the matter directed by the said postmaster-general, for all moneys, postage stamps, stamped envelopes, &c., &c., which he as postmaster, or as agent and depositary, should receive for the use and benefit of the postmaster department; and if he entered upon the duties of that office, and continued therein up to May 31, 1861, and received the salary and commissions allowed by law therefor, he must be held strictly to the undertaking in his bond; and if the evidence shows that during his continuance in said office, as postmaster, there came to his hands property of the United States to the amount of seven hundred and seventy-two dollars and twenty-seven cents, which he has not accounted for, or paid over, as required by the postmaster-general, then a verdict for said amount, with interest at the rate of six per cent. from the date of the default, must be rendered for the plaintiff.

2. That the defendant Morrison did, in pursuance of the order of the post-office department of the Confederate States, forward to that office at Richmond all or any portion of the property of the United States, to wit, fifty-one dollars and seven cents in stamped envelopes, is not a proper accounting to the government of the United States therefor, and does not bar the right of the United States to recover judgment against said defendant and his sureties for the same.

3. That said Confederate States or government was an unlawful combination of divers persons, engaged in unlawful insurrection and rebellion against the government of the United States, and within the territory thereof, unlawfully usurping the powers of government, and as such it continued to be unrecognized as having any lawful existence,

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

till suppressed by the military power of the United States; hence neither said Confederate government, nor its officers, or agents could originate any legal action, or issue any order which the defendant Morrison was bound to obey.

4. That the surrender of the fifty-one dollars and seven cents, in stamped envelopes belonging to the United States, by defendant Morrison, on the order of the Confederate government, received by him through the agent of the mails, was not a surrender or yielding up of the United States' property under the pressure of irresistible force, but a violation of the condition of his official bond, unauthorized, and contrary to law.

5. That the destruction of the one hundred and thirty-one dollars and sixty-two cents in postage stamps, by the United States' forces, is no defense to this action, unless he, Morrison, postmaster, shows affirmatively:

1. That he was loyal to the government of the United States.

2. That such destruction occurred without his negligence or default.

CHASE, Circuit Justice (charging jury). We shall decline to give the instructions asked for by the counsel for the government, except so far as they are embodied in what we shall now proceed to say. The policy of the government of the United States, in respect to the business of the post-office department, requires that principals and sureties upon the bonds of postmasters shall be held liable at all events. The decisions of the courts have constantly affirmed this doctrine. Neither robbery, nor theft, nor misadventure of any kind, except perhaps, when caused by the action of the government itself, will excuse a postmaster or his sureties. It is admitted, in accordance with this principle, that the present defendants are liable to the amount of three hundred and seventy dollars. But, it is claimed, that the postmaster, and, of course, his sureties also, are relieved, as to certain other liabilities assessed against him by the government. This relief, under the acts of congress, can arise only in two ways either through acts of Confederate troops, or through acts of the national troops. No relief could arise under any authority of the Confederate government. That government was founded in an attempt to throw off the authority of the United States, and establish an independent republic. If that attempt had succeeded, all transactions authorized by the Confederate government must doubtless have been recognized as lawful. But in the absence of success, that government was itself unlawful. Its whole existence was a continued rebellion against the lawful government of the United States. No one could be protected in any action by the sanction of its authority. The only exception to this are acts of war. The National government, in its exercise of a sound discretion, conceded belligerent rights to the armies of the insurgent states during the late civil war; and acts of a strictly military character, performed under military authority, may be protected by this concession. This, however, has nothing to do with the present case. It is not pretended that the postmaster failed to account to the government in consequence of any military orders; nor, indeed, would military orders for such a purpose constitute a defense. But the congress of the United States, sensible of the hardships which must attend the vigorous enforcement of the rule to which we have adverted, against postmasters for defaults occasioned by the late civil war, has thought fit to afford them a certain measure of relief. The act of 1864 [13 Stat. 62] authorizes the postmaster-general to credit postmasters for certain losses occasioned by the Confederate forces or Rebel guerrillas. This relief is confined to loyal postmasters. The act of 1865 [Id. 505] extends the same relief to cases where the losses are occasioned by armed forces other than those of the so-called Confederate States. If you find, therefore, that part of the loss in the present case was occasioned by armed forces other than those of the Confederate States, at the place where this post-office was established, that is to say, at Winnsboro, you will deduct the amount of such loss from the whole amount of the account stated.

The whole law upon the subject may be briefly stated thus: You are bound to take the amount stated in the account furnished from the post-office department as the true amount due from the principal defendant. Neither he nor his sureties are excused from the payment of that amount by any loss through fraud or force, except under the acts of congress referred to. For losses described by these acts, the defendants are not responsible. If you find, therefore, that any part of the loss of the principal defendant was occasioned by the presence of armed forces other than those of the insurgent states, you will deduct that amount from the sum stated in the post-office account, and render a verdict for the balance.

In response to a request of the district-attorney, the chief justice further charged the jury that interest upon the amount found due should be computed from the time of default of payment, that is to say, from June 30, 1861.

The jury retired, and after being out about an hour, the court was informed that one of the jurors had been taken sick. The jury returned into court, when the foreman reported that they were unable to agree upon a verdict. A mistrial was ordered, and the jury discharged.